IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

BRITTNEY BROWN

          *Plaintiff,*

  vs.

ROGER FLOWERS,

          *Defendant.*

Case No. 17-CV-347-EFM

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Brittney Brown's Motion for Attorney's Fees (Doc. 231). After a three-day jury trial on Plaintiff's Fourteenth Amendment claim against Defendant Roger Flowers, the jury found in favor of Plaintiff and awarded her $75,000. Plaintiff now moves for an award of attorney's fees under 42 U.S.C. § 1988 in the amount of $155,748.50, plus an upward adjustment of $77,874.25. Because an upward adjustment is not warranted in this case and because the lodestar fee request must be reduced for a variety of reasons, the Court grants Plaintiff's motion only in part and awards Plaintiff $121,452.50 in attorney's fees. The Court also directs the Clerk of the Court to tax the requested $5,718.26 in costs, as laid out in Plaintiff's Bill of Costs (Doc. 232).

## I.        Factual and Procedural Background

Plaintiff brought this case under 42 U.S.C. § 1983 against Defendants Roger Flowers, Mike Sinnett, and Pontotoc County Sheriff John Christian for violations of her Fourteenth Amendment rights.  She alleged that Flowers, a guard, raped her twice while she was a pre-trial detainee in the Pontotoc County Justice Center.  She further alleged that Sinnett, then the jail administrator of the Pontotoc County Justice Center, retaliated against her for reporting these rapes and was also liable as Flowers' supervisor, and that Sheriff Christian was liable both individually and as a supervisor. The Court granted summary judgment in full to both Sinnett and Sheriff Christian.  Flowers, by contrast, achieved only partial success, as the Court granted his request to dismiss the issue of punitive damages but denied his assertion of qualified immunity.

Plaintiff proceeded to trial against Flowers.  After a three-day jury trial, the jury returned a verdict in favor of Plaintiff in the amount of $75,000 on her sole claim that Flowers raped her in violation of her Fourteenth Amendment rights. Within two weeks after judgment was entered, Plaintiff moved for an award of attorney's fees under 42 U.S.C. § 1988.  She thereafter filed a notice of appeal as to the judgment and the Court's three summary judgment orders.

## II.       Legal Standard

In an action to enforce § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[1]  A "prevailing party" is one who has "succeeded on any significant issue in litigation which achieved some of the benefit

---

[1] 42 U.S.C. § 1988.

the parties sought in bringing suit."[2]  Defendant does not dispute that Plaintiff is the prevailing party in this action.

A reasonable attorney's fee under § 1988 is determined by a "deceptively simple mathematical equation:"[3] the hours reasonably expended during the litigation multiplied by a reasonable hourly rate.[4]  Courts refer to this amount as the "lodestar," as it is the "guiding light" in determining a reasonable fee.  There is a strong presumption that the lodestar amount is a reasonable fee.[5]

After determining the lodestar, the Court must consider whether an adjustment, either upward or downward, is necessary to arrive at a reasonable fee.  The factors set forth in *Johnson v. Georgia Highway Express, Inc.*,[6] are helpful in determining whether an adjustment is appropriate.[7]  These factors are:

> (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill required to perform the legal services properly; (4) preclusion of other employment by the attorneys because they accept engagement in the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.[8]

---

[2] *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal alteration and quotations omitted).

[3] *Dartez v. Peters*, 2022 WL 2817601, at *6 (D. Kan. 2022).

[4] *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010) (citation omitted).

[5] *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *as supplemented*, 483 U.S. 711 (1987)).

[6] 488 F.2d 714 (5th Cir. 1974), *abrogated in part on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989)).

[7] *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010 (noting that "under appropriate circumstances [the *Johnson* factors] may be useful in determining subsequent ad hoc adjustments to the lodestar.").

[8] *Cecil v. BP Am. Prod. Co.*, 2018 WL 8367957, at *4 (E.D. Okla. 2018).

Although the court may consider each factor, it need not consider those factors "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[9] This is because the lodestar amount should be the primary consideration when determining fee award.[10]

It is the burden of the party seeking attorney's fees to "establish the reasonableness of each dollar, each hour, above zero.[11] A "reasonable attorney's fee is one that is adequate to attract competent counsel, but . . . that does not produce windfalls to attorneys."[12] While an evidentiary hearing is "generally preferred" when a motion for attorney's fees raises factual disputes, the Court may decide such a motion without a hearing based on its familiarity with the case, so long as the parties are given "ample opportunity to brief and argue" the motion and provide pertinent affidavits.[13]

Even after a notice of appeal is filed, the district court retains jurisdiction of over collateral matters such as the propriety and amount of an award of attorney's fees.[14]

---

[9] *Id.* (citation and internal quotation marks omitted).

[10] *Id.* (citation and internal quotation marks omitted).

[11] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

[12] *Three RP Ltd. P'ship v. Dick's Sporting Goods, Inc.*, 2019 WL 7717395, at *1 (E.D. Okla. 2019).

[13] *Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995) (citing cases).

[14] *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998); *see also Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987) ("[E]ven after a timely notice of appeal is filed, a district court may retain jurisdiction to determine the propriety and amount of attorney's fees.").

### III.   Analysis

**A.   Lodestar**

   *1.   Reasonable Hourly Rate*

"A reasonable rate is the prevailing market rate in the relevant community."[15]   In determining a reasonable rate, the Court

> should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees.[16]

The movant bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[17]

   Plaintiff suggests $395 per hour is a reasonable rate.  To meet her burden, Plaintiff offers a declaration of her attorney, Stephen Capron.  Mr. Capron states that he has been practicing law in Oklahoma since 1999 and regularly represents clients in civil rights litigation.  He represents that his standard hourly rate is currently $410 per hour, which has recently been increased from $395 per hour in order to account for currently prevailing market conditions.  Mr. Capron states that his paying clients regularly agree to pay this rate.  In her brief, Plaintiff also suggests that a court in Tulsa County recently determined that $395 per hour was a reasonable rate for Mr. Capron.

---

[15] *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[16] *Sussman v. Patterson*, 108 F.3d 1206, 1211 (10th Cir. 1997) (quoting *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987)).

[17] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (quoting *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)).

But Exhibit 2—Mr. Capron's declaration—makes no mention of this case nor facts from which the Court could conclude it was at all similar to the instant action.

This presentation is insufficient to meet Plaintiff's burden. The fact that Mr. Capron's paying clients regularly agreed to pay $395 per hour does not conclusively establish that the "requested rate[] [is] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[18] Counsel's customary billing rate is "a relevant but not conclusive factor."[19] And there is no information about the Tulsa County action that Plaintiff describes in her brief, other than that the court in that case purportedly determined that $395 per hour was a reasonable rate for Mr. Capron. Mr. Capron's affidavit fails to reference this Tulsa County action. The Court will conduct its own independent analysis of fee awards in similar cases.

Unfortunately, there are no recent Eastern District of Oklahoma cases in which the Court has been required to determine a reasonable hourly rate in a civil rights case. One recent case from this district, however, may still provide some guidance. In *Three RP Limited Partnership v. Dick's Sporting Goods, Inc.*,[20] the defendant sought attorney's fees at the rate of $450 per hour based on the "national significance and importance" of the litigation.[21] The plaintiff objected and provided affidavits from local counsel that counsel in this area performing civil litigation typically charge

---

[18] *Id.*

[19] *Ramos*, 713 F.2d at 555.

[20] 2019 WL 7717395 (E.D. Okla. 2019).

[21] *Id.* at *2.

between $250 and $350 per hour.[22]  The Court agreed and found that a rate of $300 per hour was reasonable.[23]

Two civil rights cases from a sister court in the Northern District of Oklahoma further assist the Court in comparing fee awards as they relate to the experience of counsel.  In *Busby v. City of Tulsa*,[24] the plaintiff requested hourly rates of $400 and $350 per hour for his lead counsel, and $300 per hour for the third member of his trial team.[25]  The Court approved of each, noting that Plaintiff's lead counsel were "among the most experienced civil rights litigators in Oklahoma" and that the third trial lawyer was "a seasoned litigator with over 17 years of experience."[26]  By contrast, the court in *Brannon v. L & Y Consultants LLC*,[27] found that an attorney with six years of experience was entitled to a rate of $250 per hour.[28]

Based on the foregoing, the Court concludes that a rate of $325 per hour is appropriate for Mr. Capron.  Mr. Capron is certainly an experienced litigator, with 23 years of litigation under his belt.  But he is not among the most experienced civil rights litigators in Oklahoma, as his requested rate would reflect.  This rate fits within the Court's knowledge of prevailing rates for civil rights counsel in this district, and properly reflects Mr. Capron's experience.

---

[22] *Id.*

[23] *Id.* at *3.

[24] 2018 WL 7286180 (N.D. Okla. 2018).

[25] *Id.* at *3.

[26] *Id.* at *3-*4.

[27] 2021 WL 2624516 (N.D. Okla. 2021).

[28] *Id.* at *2.

2.      *Hours Reasonably Expended*

The second step in arriving at the lodestar amount is determining the hours Plaintiff's counsel reasonably expended in this litigation.   Counsel for the party claiming fees bears the burden to prove the hours they expended "by submitting meticulous, contemporaneous time records that reveal" the amount of time expended and their "specific tasks."[29]   The Court has "broad discretion" to determine the hours that "in its experience, should have been expended on the specific case, given the maneuverings of each side and the complexity of the facts, law, and litigation."[30]

Mr. Capron has provided the Court with a copy of his invoice for this matter, marked as Exhibit 1, which contains every time entry for the tasks undertaken in the prosecution of this case. Defendant, in response, argues that four categories of these time entries must be either substantially reduced or disregarded entirely in determining the hours reasonably expended by counsel.

a.      Block Billing

Defendant first argues that several of Mr. Capron's time entries are block-billed.   That is, some entries reflect counsel's billed hours for multiple discrete tasks while failing to indicate the amount of time spent of each specific task.   Block billing does not "fulfill the fee applicant's obligation to submit 'detailed time records' because time entries do not identify how much time was spent on each task."[31]

Plaintiff responds that each of the highlighted entries do not encompass multiple discrete tasks.   Rather, each only reflects one task and offers supporting details.   The Court finds this to be

---

[29] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) (citing *Ramos*, 713 F.2d at 553).

[30] *Id.* (citing *Ramos*, 713 F.3d at 554).

[31] *Okla. Nat. Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1263 (N.D. Okla. 2004).

generally true.  For instance, in the entry on January 11, 2017, counsel states that the time was spent reviewing materials for intake on Plaintiff's case.  He then goes on to describe what materials specifically he reviewed during that time.  Similarly, in the entry dated September 19, 2017, counsel states that he spent time researching in preparation for filing.  He then describes several of the specific questions he researched.  The Court does not find either of these problematic.

Block billing may also be problematic in a case involving "both claims for which attorney fees may be awarded and others for which an award is not permissible."[32]  Defendant notes that several entries reflect time spent on the now dismissed claims against Sheriff Christian and Mike Sinnett.  The Court addresses this below.

Defendant also accuses Mr. Capron of block billing his time in both preparation for trial and attendance at trial.  The Court does not agree that failing to make separate time entries for each task undertaken at trial constitutes block billing.  And while counsel certainly could have provided more detail in his entries for trial preparation, the Court does not find the hours billed represent an excessive time spent in trial preparation and so will not penalize counsel for these generalized entries.

b.      Excessive and Unreasonable Time

Defendant's second contention is that Mr. Capron spent an unreasonable amount of time on certain tasks.  Mr. Capron spent 12.3 hours on research early in this case.  This does not appear to have been research solely on the basic elements of a § 1983 claim, as Defendant suggests, but rather also included research on potential state law claims.  The Court finds nothing excessive about these entries.  Defendant also complains about the time Mr. Capron spent researching

---

[32] *Id.*

whether Plaintiff was required to produce her medical records, because she ultimately did not produce anything. But this time was not wasted or excessive on that ground alone. Mr. Capron appears to have reasonably spent time researching privilege in order to keep Plaintiff's medical records out of discovery. And the time Mr. Capron spent identifying and interviewing Flowers' associates was not excessive simply because these persons were never deposed and ultimately did not testify at trial.

### c.     Time Spent on Dismissed Claims

Defendant's third contention is that some of counsel's billed time was spent in furtherance of claims that were dismissed by the Court at summary judgment. The Court granted summary judgment to Sheriff Christian and Mike Sinnett on all of Plaintiff's claims against them. Defendant argues that time entries specifically relating to claims against these defendants are not compensable, and that several block billed entries that include time spent on claims against these defendants must be reduced by an unspecified amount.

The Supreme Court has established certain principles "to guide the discretion of lower courts in setting fee awards in cases where plaintiffs have not achieved complete success."[33] Where the dismissed claims are based on different facts and legal theories, "the congressional intent to limit fee awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."[34] But where the plaintiff's claims arise out of a common core of facts and related legal theories, "the inquiry is more complex."[35] In these cases, "the most critical factor is

---

[33] *Tex. State Tchrs. Ass'n*, 489 U.S. at 789.

[34] *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

[35] *Id.*

the degree of success obtained."[36]  A district court will exercise its equitable discretion in such a case to determine a reasonable fee award, either by identifying specific hours that should not be compensable or by reducing the fee award to account for the limited success of the plaintiff.[37]  By contrast, "if the plaintiff has obtained 'excellent results,' the attorney's fees should encompass all hours reasonably expended; no reduction should be made because the plaintiff failed to prevail on every contention."[38]

Plaintiff enjoyed only limited success in this case.  She initially brought claims against Flowers, Sinnett, and Sheriff Christian.  Plaintiff sought to hold Sinnett liable for allegedly retaliating against her after her report of Flower's rape, and as Flowers' direct supervisor.  She sought to hold Sheriff Christian liable both individually and as a supervisor.  The Court granted summary judgment on each of Plaintiff's claims against Sinnett and Sheriff Christian.  Plaintiff then proceeded to trial against Flowers, during which she implored the jury to award her well over $1 million in damages.  The jury found in her favor, but only awarded $75,000.  This is not a case where Plaintiff has obtained "excellent results," and thus her counsel is not entitled to be compensated for her failed claims.

Some of Mr. Capron's time entries are clearly related only to one of Plaintiff's failed claims.  For example, counsel's entry on September 18, 2017, related to research for Plaintiff's claims against Sheriff Christian.  Likewise, counsel billed 2 hours on February 6, 2018, for research on the Sheriff as the policymaker for the jail.  Other entries involve discovery conferences

---

[36] *Id.* (quoting *Hensley*, 461 U.S. at 436).

[37] *Id.* at 789-90.

[38] *Ramos*, 713 F.2d at 556.

or meet and confers with counsel for either Sinnett or the Sheriff.  The Court finds that these entries, totaling 6.6 hours, are not compensable.

Other entries are more difficult because they appear to involve both time spent on Plaintiff's failed claims against Sinnett and the Sheriff as well as her successful claims against Flowers.  Most of the entries highlighted in yellow on Defendant's Exhibit 1 fall into this category.  For instance, in his entry on November 21, 2017, Mr. Capron lumps his research on the retaliation claims against Sinnett together with research on qualified immunity, a defense raised by Flowers at summary judgment.  Entries related to discovery received from or provided to each defendant are likewise difficult to parse.  Ultimately, it is impossible for the Court to say for certain how much of each of these entries was spent on failed claims.  The Court will therefore impose a 40% reduction on the entries highlighted in yellow (excluding the 6.6 hours already discounted), resulting in a reduction of 14 hours from counsel's total time.

The Court will not reduce counsel's time for the depositions of Sinnett, Calvin Prince, or Joni Walker.  Though the testimony of these person's was primarily relevant to Plaintiff's claims against Sinnett, there remained at least a cognizable argument that their testimony would be relevant to Plaintiff's claims against Flowers.  Counsel argued at the pre-trial limine conference that the testimony of these individuals would support the purported environment of fear then-existing within the Pontotoc County Justice Center that may have explained some of Plaintiff's actions.  The Court's ruling on a Defendant's motion in limine prior to trial ultimately curtailed this argument significantly, but that does not mean the time was not reasonably expended.

d.    Vague Entries

Finally, Defendant contends that some of counsel's time entries are impermissibly vague. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time

was expended. But at least counsel should identify the general subject matter of his time expenditures."[39]

Defendant objects to two entries for time reviewing "new documents produced." While these may be imprecise, they are not impermissibly vague because the date of the entry helps identify the "general subject matter" of these documents. Similarly, Counsel's entry for "notes of issues for motions and trial as reviewed key witness testimony," while perhaps poorly written, seems to be for counsel's preparation of notes related to the testimony of key witnesses, and is thus not vague.

### 3.   *Final Lodestar Amount*

With the deductions above, Mr. Capron reasonably expended 373.7 hours in this litigation. Multiplying this number by the reasonably hourly rate of $325 per hour yields a lodestar amount of $121,452.50.

## B.   **Adjustment**

With the lodestar in hand, the Court must now consider whether an adjustment, either upward or downward, is warranted. Plaintiff contends that an upward adjustment is necessary to encourage, consistent with Congressional intent, the private remediation of civil rights violations. Defendant, by contrast, requests a downward adjustment based on his purported inability to pay.

### 1.   *Upward Adjustment*

Plaintiff seeks a 50% upward adjustment of the lodestar figure. There is a strong presumption that the lodestar is a reasonable fee,[40] but an upward adjustment to an attorney's fee

---

[39] *Hensley*, 461 U.S. at 437 n.12.

[40] *Homeward Bound, Inc.*, 963 F.2d at 1355.

award may be warranted "in some cases of exceptional success."[41]  Such cases are very rare.[42]  The fee applicant bears the burden of showing that "such an adjustment is necessary to the determination of a reasonable fee."[43]  Factors such as "the 'novelty and complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award."[44]

Counsel cites the "undesirable nature" of the case as warranting an upward adjustment. According to him, the case was undesirable from an attorney's perspective because it involved representing a plaintiff who was involved with the criminal justice system against a (former) law enforcement officer, and because it involved the defense of qualified immunity.  None of this is unusual in an action under § 1983, however, and does not warrant an upward adjustment.

Counsel also cites the "substantial public benefit" accomplished by Plaintiff's obtaining a judgment against the Defendant.  The Court does not see how this constitutes a public benefit, as she obtained a judgment against a purely private person and not against any public entity.[45]

This is not the rare and exceptional case in which in upward adjustment would be appropriate.  Plaintiff has failed to meet her burden to show an upward adjustment is warranted under the facts of the case, and therefore her request for such an adjustment is denied.

---

[41] *Blum v. Stenson*, 465 U.S. 886, 901 (1984) (quoting *Hensley*, 461 U.S. at 436).

[42] *Erickson v. City of Topeka, Kansas*, 239 F. Supp. 2d 1202, 1212 (D. Kan. 2002).

[43] *Blum*, 465 U.S. at 898.

[44] *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565 (quoting *Blum*, 465 U.S. at 898-900).

[45] *See Miller v. Dugan*, 2013 WL 3230639, at *5 (W.D. Ark. 2013) ("[T]he Court fails to see how a private settlement involving one plaintiff achieved the public benefit claimed by Plaintiff), *aff'd*, 764 F.3d 826 (8th Cir. 2014).

2.      *Downward Adjustment*

Defendant requests that the Court decline to award any attorney's fees in this case because such an award would be "unjust."  He cites his purported inability to pay the judgment or any potential award of attorney's fees as a factor the court should weigh.

The Tenth Circuit has held that a non-prevailing *plaintiff's* financial condition and ability to pay are relevant to the court's decision to award attorney's fees to a prevailing defendant under § 1988.[46] While the non-prevailing plaintiff's ability to pay "is not a proper factor to consider in determining *whether* to award attorney's fees against the plaintiff, [it] may be considered when determining *the amount* of attorney's fees to be awarded against that party."[47]  "The party seeking to reduce the amount of attorney's fees because of limited finances has the burden to plead and establish his or her financial status."[48]

There is dispute among courts as to whether the above precedent extends to fee awards against non-prevailing *defendants* in civil rights cases.[49]  The Court need not resolve this split in authority here, as Defendant has failed to provide evidence of his ability to pay even though he had the opportunity to do so.  Defendant relies solely on a letter from his insurer informing him that he would be solely responsible for the verdict and any subsequently awarded fees and costs.  This proves nothing about Defendant's financial situation or ability to pay.   Defendant has the burden to establish his financial status is such that he cannot pay an award of fees.  Though he has

---

[46] *Roth v. Green*, 466 F.3d 1179, 1194 (10th Cir. 2006).

[47] *Id.* (quoting *Wolfe v. Perry*, 412 F.3d 707, 723-24 (6th Cir. 2005).

[48] *Gibbs v. Clements Food Co.*, 949 F.2d 344, 345 (10th Cir. 1991).

[49] *Compare Willson v. City of Bel-Nor, Missouri*, 2021 WL 2255003, at *6-*7 (E.D. Mo. 2021) (rejecting the defendant's contention that the court should consider its ability to pay in determining the attorney's fee award) *with Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, 2021 WL 254268, at *19 (D. Utah 2021) (permitting the defendant to raise the ability to pay fees and costs as a factor in determining a fee award).

-15-

had the opportunity to provide the Court with any evidence of his inability to pay, he has failed to do so.   Accordingly, the Court denies Defendant's request for a downward adjustment of the lodestar amount.

## C.   Bill of Costs

Plaintiff filed a Bill of Costs (Doc. 232) on the same day as her Motion for Attorney's fees. She requests that the Clerk of the Court tax $5,718.26 as costs.  Defendant's response to the Motion for Attorney's Fees purported to object to Plaintiff's Bill of Costs.   But nowhere therein did Defendant actually raise an objection to the Bill of Costs.  The Bill of Costs is therefore without a timely objection.[50]   The Court therefore directs the Clerk of the Court to allow the Plaintiff's claimed costs in full.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorney's Fees (Doc. 231) is **GRANTED in part and DENIED in part.**   The Court awards Plaintiff $121,452.50 in attorney's fees.

**IT IS FURTHER ORDERED** that Plaintiff's claimed costs will be allowed in the full amount of $5,718.26.

**IT IS SO ORDERED.**

Dated this 14th day of April, 2023.

_Eric F. Melgren_

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[50] *See* E.D. Okla. Local Rule 54.1(b) ("Objections to the allowance of costs must be filed within fourteen (14) days from the date the bill of costs was filed.").