**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

BRITTNEY BROWN,

*Plaintiff,*

vs.

ROGER FLOWERS,

*Defendant,*

and

ASSOCIATION OF COUNTY COMMISSIONERS OF OKLAHOMA SELF-INSURANCE GROUP,

*Garnishee.*

Case No. 17-CV-347-EFM

**MEMORANDUM AND ORDER**

A jury awarded Plaintiff Brittney Brown $75,000 in compensatory damages after finding Defendant Roger Flowers violated her Fourteenth Amendment rights while she was detained in the Pontotoc County Jail. Following the jury's award, Brown filed a garnishment action against the Association of County Commissioners of Oklahoma Self Insured Group ("ACCO-SIG") seeking to recover under the Liability Coverage Agreement ACCO-SIG entered into with Pontotoc County. This matter comes before the Court on Brown's Motion to Enforce Garnishment (Doc. 257). For the reasons discussed below, the Court denies Brown's motion.

## I. Factual and Procedural Background

Plaintiff Brown was a pre-trial detainee at the Pontotoc County Jail where Defendant Flowers was employed as a detention officer. On September 17, 2017, Brown filed suit against Flowers asserting a claim under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment rights.[1] Brown alleged in part that Flowers raped her on two separate occasions. Flowers denied the allegations, claiming that the sexual intercourse was consensual. In addition to Brown's lawsuit, Flowers was charged with two counts of raping Brown and pleaded guilty in Oklahoma state court.

In January 2023, Brown's civil case was tried before a jury. Instruction No. 11, titled "Fourteenth Amendment Excessive Force," instructed the jury as follows:

> The Fourteenth Amendment protects [Brown's] right as a pre-trial detainee to be secure in her bodily integrity and free from sexual intercourse imposed upon her by jailers through coercion while held in custody. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant's conduct was objectively harmful enough to establish a constitutional violation.
>
> In this case, if you find that Defendant coerced Plaintiff to engage in sexual intercourse with him, this is sufficient to show an objective harm that violated Plaintiff's Fourteenth Amendment rights. Alternatively, if you find instead that Defendant and Plaintiff engaged in consensual sexual intercourse, you may not find that Plaintiff's Fourteenth Amendment rights were violated.

The jury found in favor of Brown and awarded her compensatory damages in the amount of $75,000.

After the entry of judgment, Flowers requested indemnity for the judgment from ACCO-SIG. Flowers' employer, Pontotoc County, is a Named Plan Member under the 2015-2016 ACCO-

[1] Brown also asserted claims against Defendant John Christian, the Pontotoc County Sheriff, and Defendant Mike Sinnett, but the Court granted summary judgment in Defendants' favor on Plaintiff's claims.

SIG Liability Coverage Agreement (the "Agreement"). ACCO-SIG refuses Flowers' request for indemnification under the Agreement.

Brown subsequently initiated garnishment proceedings in this case against ACCO-SIG as Flowers' judgment creditor. ACCO-SIG objected on the basis that no coverage exists for Flowers' conduct under the Agreement. Brown then moved to enforce the garnishment.

## II. Legal Standard

A garnishment proceeding "is a special and extraordinary remedy given only by statute."[2] "[T]he judgment creditor stands in the shoes of the judgment debtor to enforce a liability owed to the latter by a third party-the garnishee."[3] The judgment creditor may not claim greater rights against the garnishee than the judgment debtor possesses.[4] The Court must "render such judgment in all cases as shall be just to all of the parties and shall properly protect their respective interests."[5]

## III. Analysis

Brown and ACCO-SIG dispute whether indemnity coverage exists under the Agreement. The parties agree that the Agreement is to be construed under Oklahoma law governing insurance contracts. "Under Oklahoma law, an insurance policy is a contract and is interpreted accordingly."[6] "[C]ourts must examine the policy language objectively to determine whether an

---

[2] *Johnson v. Farmers All. Mut. Ins. Co.*, 499 P.2d 1387, 1390 (Okla. 1972) (citation omitted).

[3] *Thames v. Evanston Ins. Co.*, 2015 WL 3398149, at *1 (N.D. Okla. May 26, 2015).

[4] *Id.*

[5] *Id.* (quoting Okla. Stat. tit. 12, § 1182).

[6] *Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013) (*citing First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302 (Okla 1996)).

insured could reasonably have expected coverage."[7] "[U]nclear or obscure clauses in an insurance policy will not be permitted to defeat coverage which is objectively reasonably expected by a person in the position of the insured."[8] The Court must "look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent."[9]

**A. Flowers is not a Plan Member covered by the Agreement because he acted outside his Scope of Duties.**

The Agreement requires ACCO-SIG to pay the damages a "Plan Member" is legally obligated to pay resulting from a wrongful act occurring in performance of the Plan Member's law enforcement duties. ACCO-SIG argues that Flowers does not qualify as a Plan Member, and thus, ACCO-SIG has no obligation to indemnify him as to the damages arising from Brown's lawsuit.

In the section entitled "Who is covered," the Agreement states that all "Named Plan Members"—which in this case is Flowers' employer, Pontotoc County—are "Plan Members." The Agreement further provides that an employee of a Named Plan Member is a Plan Member "while performing and acting within the Scope of Duties for a Named Plan Member." Thus, Flowers becomes a Plan Member if he was performing and acting within his Scope of Duties for Pontotoc County. The Agreement defines "Scope of Duties" as "performance by an Employee acting in good faith within the duties of the Employee's office or employment or of tasks lawfully assigned by a competent authority." It further states that "Scope of Duties shall not include any dishonest, criminal, fraudulent, bad faith, reckless, wanton or malicious act."

---

[7] *Max True Plastering Co. v. U.S. Fid. & Guar. Co*., 912 P.2d 861, 865 (Okla. 1996) (citations omitted).

[8] *Spears v. Shelter Mut. Ins. Co*., 73 P.3d 865, 868 (Okla. 2003).

[9] *Porter v. Okla. Farm Bureau Mut. Ins. Co*., 330 P.3d 511, 515 (Okla. 2014) (citing *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376-77 (Okla. 1991)).

ACCO-SIG argues that Flowers' conduct falls well beyond his Scope of Duties in that (1) his conduct was a crime, for which Flowers' pleaded guilty and was convicted; (2) the jury's finding that Flowers engaged in coerced sexual intercourse with Brown shows that it was a "bad faith, reckless, wanton, or malicious act" and (3) Brown can point to no policy or document stating that coercive intercourse with a detainee was within the scope of Flowers' duties as a Pontotoc County jailer. In response, Brown argues that the jury never made any finding in her civil case as to whether Flowers was acting in the scope of his duties. She argues that there was never any adjudication by the jury as to whether Flowers' conduct was dishonest, criminal, fraudulent, bad faith, reckless, wanton, or malicious. According to Brown, Flowers was acting in his scope of duties because the parties admitted in the Pretrial Order that Flowers was acting in his capacity as jailer at all times.

The Court agrees with Brown that the jury never specifically found that Flowers' conduct was dishonest, criminal, fraudulent, bad faith, reckless, wanton, or malicious. But, a finding as to these characteristics is not required for the Court to determine that Flowers was acting outside his Scope of Duties. The definition of "Scope of Duties" requires an employee to be acting in good faith within the duties of the employee's office. Brown cannot seriously argue that sexual intercourse with an inmate is a good faith act within Flowers' duties as a jailer. Furthermore, although the parties agree that Flowers was working as a jailer during the events at issue, how Flowers was employed versus the permitted scope of his duties are two different concepts.[10] Thus,

[10] Because the Court concludes that coerced sexual intercourse is not within his good faith duties as a jailer, the Court need not address whether Flowers' guilty plea renders his conduct "criminal," and thus outside his "Scope of Duties."

the Court finds that Flowers was not acting within his Scope of Duties when he engaged in intercourse with Brown.

Brown also argues that coverage exists without regard to Flowers' Scope of Duties. She claims that Flowers is entitled to coverage under the General Liability Coverage provision, which states, "We will pay on behalf of the Plan Member those sums the Plan Member becomes legally obligated to pay as Damages . . . because of Bodily Injury." The term "Bodily Injury" is defined, in part, as "bodily injury, mental injury, mental anguish, sickness or disease sustained by a person." Brown argues that the damages at issue here are for "Bodily Injury," and thus coverage applies.

Brown bolsters her argument by comparing the "General Liability Coverage" provision to the "Personal Liability Coverage" provision, which states, "We will pay on behalf of the Plan Member those sums the Plan Member becomes legally obligated to pay as Damages . . . because of Personal Injury." The definition of "Personal Injury" includes "injury, other than Bodily Injury, . . . caused by the acts of Plan Members or Employees while acting in the Scope of Duties." Brown points out that the parties to the Agreement chose to make "Personal Injury" coverage subject to damages caused in the employee's Scope of Duties but omitted that restriction in providing coverage for "Bodily Injury." Thus, Brown contends that Flowers is entitled to coverage under the Agreement in this instance without regard to whether Flowers acted in his Scope of Duties.

The problem with Brown's argument is that it presupposes that Flowers is a Plan Member. The General Liability Coverage provision only covers damages a Plan Member is legally obligated to pay. Because the Court has determined that Flowers does not qualify as a Plan Member, the General Liability Coverage provision does not apply. This construction is consistent with the other provisions in the Agreement. Paragraph 34 of the "Common Exclusions" states that ACCO-SIG has no obligation to pay for any loss in which the Named Plan Member's employee acted outside

the Scope of Duties. This provision, along with the "Who is covered" provision noted above, indicates that the parties to the Agreement did not intend for ACCO-SIG to indemnify losses caused by an employee of a Named Plan Member acting outside his or her Scope of Duties.

Overall, the Court concludes that ACCO-SIG is not required to indemnify Flowers under the Agreement because he is not a Plan Member.

**B. Flowers' conduct is excluded from coverage under the Agreement.**

Even if the Court found that Flowers is a Plan Member, his conduct is excluded from coverage under the Agreement. One of the Agreement's "Common Exclusions" excludes coverage for claims or losses arising from sexual abuse by a Plan Member. The Agreement provides:

> We have no obligation to pay nor do We have any obligation to defend any Claim against a Plan Member because of:
> . . .
> 38. Any Claims and/or alleged Losses and Damages arising out of, related to, or derived from any Sexual Abuseif [sic] a final adjudication establishes or the Plan Member admits (a) that the Plan Member participated in the Sexual Abuse or (b) if the Sexual Abuse was ongoing, that the Plan Member had knowledge of the Sexual Abuse and failed to take reasonable action to stop the Sexual Abuse.
> . . .
>
> iii. Subject to all of the terms, conditions, and Limits of Liabiilty [sic] of this Agreement, ACCO-SIG will indemnify a Plan Member for liability arising in connection with a Sexual Misconduct Claim unless a final adjudication establishes or the Plan Member admits (a) that the Plan Member participated in the Sexual Abuse or (b) if the Sexual Abuse was ongoing, that the Plan Member had knowledge of the Sexual Abuse and failed to take reasonable action to stop the Sexual Abuse.

The Coverage Agreement defines "Sexual Abuse" and "Sexual Misconduct Claims" as "any actual, attempted or alleged sexual act by any person or any persons acting in concert, which causes physical and mental injuries to anyone." The definition further states that "Sexual Abuse" and

"Sexual Misconduct Claims" include allegations and claims involving sexual molestation and sexual advances of any kind, both welcome and unwelcome.

ACCO-SIG argues that this exclusion applies because Flowers pleaded guilty to raping Brown and thus admitted to Sexual Abuse. In the alternative, ACCO-SIG argues that the jury's finding that Flowers and Brown engaged in non-consensual sexual intercourse amounts to "Sexual Abuse" under the agreement, and that the jury's verdict constitutes a "final adjudication." In response, Brown contends that Flowers never admitted to rape in this case. Brown contends that, at most, Flowers admitted to engaging in sexual intercourse with Brown, and sexual intercourse alone does not meet the definition of Sexual Abuse.

Brown's argument conveniently ignores the full language of the exclusion. In focusing on whether Flowers admitted to engaging in Sexual Abuse, she misses the fact that the exclusion also encompasses a final adjudication establishing that the Plan Member participated in the Sexual Abuse. Here, the jury's verdict and final judgment establish that Flowers participated in Sexual Abuse. By finding in Brown's favor on her Fourteenth Amendment claim, the jury determined that Flowers coerced Brown into having sexual intercourse. Furthermore, the jury also found that Brown suffered injury because it awarded her $75,000 in compensatory damages. Thus, because a final adjudication established that Flowers participated in Sexual Abuse, Flowers' conduct is excluded from coverage under the Agreement.[11]

Brown argues that there was no adjudication of Sexual Abuse because the jury could have reached its verdict merely upon a finding that Flowers' application of force was objectively

[11] Because the Court finds that the jury's verdict constitutes a final adjudication establishing that Flowers participated in Sexual Abuse, the Court need not consider the parties' arguments as to whether Flowers' guilty plea amounts to an admission that he participated in Sexual Abuse.

unreasonable. According to Brown, the jury did not necessarily find coercion. This argument, however, is not persuasive. Regardless of how Brown attempts to portray her claim now, the facts presented to the jury revolved around whether she and Flowers engaged in nonconsensual sex. Furthermore, the jury was specifically instructed, "if you find that Defendant coerced Plaintiff to engage in sexual intercourse with him, this is sufficient to show an objective harm that violated Plaintiff's Fourteenth Amendment rights." Thus, in finding for Plaintiff on her Fourteenth Amendment claim, the jury necessarily found that Flowers coerced Brown to have sexual intercourse with him.

Overall, the Court concludes that Flowers is not a "Plan Member" under the Agreement because his conduct did not fall within his Scope of Duties. In the alternative, Flowers' conduct is excluded from coverage under the Agreement because it falls within the "Sexual Abuse" exclusion listed within the "Common Exclusions." Therefore, ACCO-SIG is not required to indemnify Flowers for the $75,000 judgment against him.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Enforce Garnishment (Doc. 257) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 16th day of January, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE